IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESSICA GARNER,
Individually  and on behalf of all others
similarly situated

     *Plaintiff*

     v.

CLAIMASSIST, LLC, et al.
     *Defendants*.

Civil Action No. ELH-16-1260

## MEMORANDUM OPINION

Jessica Garner, plaintiff, individually and on behalf of all others similarly situated, initiated a class action against defendants ClaimAssist, LLC ("ClaimAssist"); Credit Control Services, Inc. ("CCS"); and CCS Financial Services, Inc. ("CCS Financial"),[1] alleging violations of the Fair Debt Collection Practices Act ("FDCPA" or "Act"), as amended, 15 U.S.C. § 1692 *et seq*.  ECF 1.  According to plaintiff, ClaimAssist, CCS, and CCS Financial operate, in effect, as a single entity.  ECF 1, ¶¶ 6, 7.

In particular, Garner alleges that ClaimAssist is a debt collector that violated the FDCPA because it made false representations and used deceptive or misleading means to attempt to collect a debt from a consumer.  She relies, *inter alia*, on a letter dated April 28, 2015, sent by ClaimAssist to plaintiff's tort lawyer, asserting that a hospital lien had been lodged against plaintiff on behalf of Northwest Hospital.  *Id.* ¶¶ 11, 12, 27, 28; ECF 1-1.

Defendants answered the suit.  ECF 8 (ClaimAssist); ECF 9 (CCS; CCS Financial).  Thereafter, they filed a Motion for Judgment on the Pleadings (ECF 20), which is supported by a

---

[1] CCS Financial allegedly trades as CCS Global Holdings, Inc.; CCS Resources, Inc.; CCS Commercial, LLC; CCS Financial Services Business Trust; CCS Global Management, LLC; CCS Holding Business Trust; and CCS National, LLC. ECF 1, ¶¶ 6, 7.

Memorandum of Law.  ECF 21 (collectively, "Motion").  Garner opposes the Motion (ECF 26, "Opposition) and defendants have replied.  ECF 27 ("Reply").

The Motion is fully briefed and no hearing is required to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I.      Factual History[2]

ClaimAssist is a limited liability company, formed under the laws of Delaware, with its principal office in Newton, Massachusetts.  ECF 1, ¶ 5.  It "holds itself out, in publicly available documents, as providing 'recovery services' (*i.e.*, debt collection services) 'for the health care industry.'"  *Id.*  According to the Complaint, customer service representatives of Claim Assist "actively negotiate and settle outstanding alleged debt amounts on behalf of" its "medical provider clients."  *Id.*  ClaimAssist is publicly identified as a CCS company that is "'proven to maximize overall recoveries.'"  *Id.*  Indeed, ClaimAssist "touts itself 'as a leader in recovering Revenue Cycle Funds.'"  *Id.*

CCS and CSS Financial are Delaware corporations that maintain their principal offices in Newton, Massachusetts.  *Id.* ¶ 6, ¶ 7.  CSS "is the owner and manager" of ClaimAssist and "in that capacity directs and/or is legally responsible for the acts and omissions of ClaimAssist, LLC . . . ."  *Id.*  CCS Financial is the manager of ClaimAssist and, "in that capacity directs and/or is legally responsible for the acts and omissions of ClaimAssist."  *Id.*  According to plaintiff, CCS Financial and/or ClaimAssist "improperly disregard corporate formalities and effectively operate a single 'CCS' . . . ."  *Id.*  Hereafter, unless the context indicates otherwise, I shall refer to defendants collectively as "ClaimAssist."

---

[2] Given the posture of the case, I accept as true the facts alleged in the Complaint.

The FDCPA case is rooted in the events of May 16, 2014, when Garner was involved in a motor vehicle accident in Baltimore. *Id.* ¶ 9 (the "Collision"). From the scene of the Collision, "Garner was transported via ambulance to Northwest Hospital," where she received medical treatment. *Id.* ¶ 10. As a result, Garner incurred a debt to Northwest Hospital (the "Hospital" or "NWH"). *Id.* In connection with the Collision, Garner retained a lawyer, Michael Greene, to represent her in a tort case. Greene now represents Garner in the FDCPA action.

On April 28, 2015, ClaimAssist sent Greene a letter. *Id.* ¶ 11; *see* ECF 1-1 ("Letter"). Page one of the Letter provides, ECF 1-1 at 1:

> Dear MR GREEN [sic],
>
> The attached is a copy of the lien in which [sic] NORTHWEST HOSPITAL has filed with BALTIMORE CITY CIRCUIT COURT.
>
> This is to inform you that we statutorily attach a hospital lien to any funds that an injured patient may receive as reimbursement as a result of an accident or injury.
>
> Title 16 S16-601 is the Maryland Statute providing the legal means of insuring payment of the injured person's hospital bill. The lien is filed when the possibility exists that other persons, firms or corporations may be liable for damages caused to the patient.
>
> An example would be if a person was injured in an automobile accident and an insurance company was expected to cover the related hospital expenses, the hospital would file a lien to insure that they would be paid out of any recovered funds.
>
> The patient and/or person or company who appear on the lien is provided a copy of said lien by certified mail.
>
> Please let me know if you have any questions about this procedure.
>
> Sincerely,
> RAJA KHOURY

Page two of the Letter is titled "NOTICE AND CLAIM OF HOSPITAL LIEN." ECF 1-

1 at 2. A facsimile of page two of the Letter is included below.

---

Case 1:16-cv-01260-ELH   Document 1-1   Filed 04/27/16   Page 2 of 2

Please Return to: NORTHWEST HOSPITAL
C/o ClaimAssist
2 Wells Avenue
Newton MA 02459

## NOTICE AND CLAIM OF HOSPITAL LIEN

OUR CLAIM: 2223888
Name of Claimant Hospital: NORTHWEST HOSPITAL
Address of Hospital: 2401 W. BELVEDERE AVE  BALTIMORE  MD 21215
Name of Executive Officer or Agent of Hospital: Raja Khoury      Telephone # 800-875-5808  EXT. 2496
Address of Executive Officer or Agent of Hospital: 2 Wells Avenue, Newton, Mass  02459
Name and address of Patient:  JESSICA  GARNER  11934 NORTH ST APT 3  TANEYTOWN  MD 21762
Date of Patient Admission:     5/16/2014  Date of Patient's Discharge: 5/16/2014
Amount due for care of  $801.16
County in which injuries were treated: BALTIMORE
To the best of claimant's knowledge the names and addresses of all persons, firms or corporations
and the insurance carriers of said persons, firms or corporations claimed by the above named patient,
or by his or her legal representative, to be liable for damages are as follow

JESSICA  GARNER  11934 NORTH ST APT 3  TANEYTOWN  MD 21762
No  other responsible parties identified as this time.

The above named hospital pursuant to laws of the State of Maryland in such cases made and provided, does hereby
claim a lien upon any and all causes of action, suits, claims, counter-claims, or demands for damages accruing to the
patient  named herein, or to the legal representative of such patient, on account of injuries giving rise to such causes
of action and which necessitated his or her hospitalization, for its customary charges for hospital care and treatment
of the above named injured patient in the sum hereinabove claimed to be due.  The name and address of the patient
as hereinbefore set forth are as the same appear on the records of the hospital.

_____
Executive Office or Agent of
Hospital

STATE OF MARYLAND

County of BALTIMORE            } ss

RAJA KHOURY  being first duly sworn, upon oath deposes and says: That he/she is the Executive Officer or Agent
of NORTHWEST  Hospital and makes this Notice and Claim of Lien for and on behalf of said hospital, being
hereunto duly authorized; that the matters and things contained in the foregoing notice and claim of Lien are true.

Subscribed and sworn to before me on this ____ 4/28/2015 _____

My Commission expires _____

Date of filing: _____          Hour of filing _____

No. _____

As the Letter reflects, page two includes, *inter alia*, Garner's name and address, and provides that Garner was admitted to the Hospital on May 16, 2014, and discharged from the Hospital on the same date.  ECF 1-1 at 2.  Further, it indicates: "Amount due [to NWH] for care for $801.16.  *Id.*

The Letter identifies NWH as the "Claimant Hospital" and Raja Khoury, who signed page one of the Letter on behalf of ClaimAssist, as the "Executive Officer or Agent of Hospital." *Id.*  The Letter also includes the following statement, *id.*:

> The above named hospital pursuant to laws of the State of Maryland in such cases made and provided, does hereby claim a lien upon any and all causes of action, suits, claims, counter-claims, or demands for damages accruing to the patient named herein, or to the legal representative of such patient, on account of injuries giving rise to such causes of action and which necessitated his or her hospitalization, for its customary charges for hospital care and treatment of the above named injured patient in the sum hereinabove claimed to be clue.

In addition, the Letter provides, *id.*: "No other responsible parties identified at this time."

According to plaintiff, the Letter inaccurately stated that she owed $801.16 to NWH. ECF 1, ¶ 12.  Garner does not seem to dispute that a debt was owed to the Hospital.  Rather, she claims that she had "health insurance (and/or other contractual / legal relationship) with Aetna insurance . . . and U.S. Medicare . . . ." and the Hospital and ClaimAssist were legally required to process the bill for hospital services consistent with NWH's agreements with Aetna and Medicare.  *Id.*  According to plaintiff, the bill had not been processed as of April 28, 2015.  *Id.* Therefore, "the alleged debt amount of $801.16 was plainly false, inaccurate, deceptive, and/or misleading (including by being not certain, and known to be so)."  *Id.*

## II.     Standard of Review

Defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).   Under Rule 12(h)(2)(B), a defendant may assert "failure to state a claim upon which

relief can be granted" in a Rule 12(c) motion.  And, a Rule 12(c) motion "for judgment on the pleadings" may be filed "[a]fter the pleadings are closed," so long as it is "early enough not to delay trial."  A motion under Rule 12(c) is "assessed under the same standard that applies to a Rule 12(b)(6) motion."  *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the well-pleaded allegations are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Hall v. DirecTV, LLC*, ___F.3d ___, No. 15-1857, 2017 WL 361065, at *4 (4th Cir. Jan. 25, 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.

Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff

is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 1960 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them.  *Twombly*, 550 U.S. at 555–56 (2007).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014).  However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

Under limited exceptions, a court may consider documents outside the complaint, without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).  In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."  *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am.*

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

Here, plaintiff included the Letter as an exhibit to the Complaint. And, the claims in the Complaint are based upon the content of the Letter. ECF 1 ¶ 11. The Letter is integral to the Complaint, and there is no dispute as to its authenticity. *See* ECF 20; ECF 21. Consequently, I may consider the Letter.

### III.     Overview of the FDCPA

Congress enacted the FDCPA in 1977 (*see* Pub. L. 95–109, 91 Stat. 874 (1977)) to protect consumers from debt collectors who engage in "abusive, deceptive, and unfair debt collection practices," to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). The statute is concerned with "rights for

consumers whose debts are placed in the hands of professional debt collectors . . . ." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009).

"A significant purpose of the Act" is the elimination of "abusive practices by debt collectors . . . ." *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006). Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor. *Id.*; *see*, *e.g.*, *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 393 (4th Cir. 2014) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987)) (recognizing the canon of statutory interpretation that remedial statutes are to be construed liberally)); *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).

To establish a claim under the FDCPA, "a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 Fed. App'x 331, 333 n.3 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)); *see Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012). "Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees." *Russell*, 763 F.3d at 389 (citing 15 U.S.C. § 1692k(a)(1), (a)(3)). "The FDCPA also provides the potential for statutory damages up to $1,000 subject to the district court's discretion." *Id.* (citing 15 U.S.C. § 1692k(a)(2)(A)).

Title 15 of the United States Code provides, at § 1692e(10): "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection

of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  Section 1692f of the same Title states, in pertinent part: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

The FDCPA defines the term "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, *directly or indirectly, debts owed or due or asserted to be owed or due another*."  15 U.S.C. § 1692a(6) (emphasis added); *see Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208-09 (9th Cir. 2013); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000).  Thus, the original creditor is not a debt collector.  *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011).  Moreover, under the Act, the definition of "debt collector" does not include an entity that is "collecting or attempting to collect any debt . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ."  *Id.* § 1692a(6)(F).

A "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  15 U.S.C. § 1692a(4).  Generally, entities servicing or collecting a debt they were assigned before default are considered "creditors" under the Act.

"The structure of the Act suggests" that an entity receiving or attempting to collect money due on a debt "must be one or the other," that is, either a debt collector or a creditor. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003).  Creditors and debtors

are generally "mutually exclusive" categories under the FDCPA. *Schlosser*, 323 F.3d at 536; *see F.T.C. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."); *accord*, *e.g.*, *Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011).

The status of the entity, *i.e.*, debt collector or creditor, is determined with respect to the particular debt at issue and depends on the purpose for which the entity is assigned the debt. *See* 15 U.S.C. § 1692a(4) (excluding from definition of "creditor" a person who "receives an assignment or transfer of *a debt* in default *solely for the purpose of facilitating collection* of such debt for another") (emphasis added); *id.* § 1692(a)(6)(F)(iii) (excluding from definition of "debt collector" a person who is collecting "any debt … to the extent such activity . . . (iii) concerns *a debt* which was not in default at the time it was obtained . . . .") (emphasis added). "If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt." *Schlosser*, 323 F.3d at 536. "On the other hand, if [the entity] simply acquires the debt for collection, it is acting more like a debt collector." *Id.* And, "[t]o distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment . . . ." *Schlosser*, 323 F.3d at 536; *see also* 15 U.S.C. § 1692a(4); *id.* § 1692a(6)(F)(iii); *Ruth*, *supra*, 577 F.3d at 796 ("'Where, as here, the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired.'").

Additional statutory provisions are discussed, *infra.*

## IV.     Discussion

Defendants assert three grounds to support their Motion.  First, defendants claim that they cannot be liable for a breach of the FDCPA because ClaimAssist is not a debt collector within the meaning of the Act.  ECF 21 at 7-12.  Second, defendants argue that, even if ClaimAssist is a debt collector under the statute, the Letter was not an attempt to collect a debt.  *Id.* at 12-15.  Finally, defendants argue that the suit fails to state a claim for which relief may be granted because the Letter is not a "communication" to collect a "debt," within the meaning of the FDCPA.  *Id.* at 15-16.[3]

### A.

Defendants claim that Garner has failed to state a claim because ClaimAssist is not a "debt collector" within the meaning of the FDCPA.  ECF 21 at 7-12.  According to ClaimAssist, it cannot be a debt collector if it has not acquired the authority to collect money on behalf of NWH.  ECF 21 at 7.  And, defendants claim that the debt was not yet in default when the Letter was sent.  ECF 21 at 15 n. 5.

At this stage of the litigation, the Court cannot determine whether Garner was in default when the Letter was sent.  Such a claim is similar to an affirmative defense, and can only support dismissal in the rare circumstance where it is clear from the face of the complaint that the debt was not in default.  *See Goodman*, *supra*, 494 F.3d at 464.

To be sure, the Complaint does not expressly allege that ClaimAssist acquired the debt.  *See* ECF 1.  But, the Fourth Circuit has recognized that an entity need not acquire a debt in order to be a "debt collector."  In *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354 (4th Cir. 2016), the Fourth Circuit considered, *inter alia*, whether a law firm retained to foreclose on a

---

[3] The review of the contentions requires the Court to address similar arguments in multiple contexts.

home following a default on a mortgage could be considered a "debt collector" under the statute. *Id.* at 358-59.  The law firm claimed that it should not be considered a debt collector because plaintiff had "'failed to plead any facts indicating that [the firm] had made <u>any demands for payment</u>, or that they in any way communicated deadlines and penalties for McCray's failure to make any payment.'"  *Id.* at 359 (emphasis and alteration in *McCray*).  And, the law firm claimed that a foreclosure action is "'fundamentally distinct from a debt collection activity covered under the FDCPA.'"  *Id.*

The *McCray* Court observed: "The FDCPA's definition of debt collector . . . does not include any requirement that a debt collector be engaged in an activity by which it makes a 'demand for payment' . . . ."  *Id.* at 359.  The Court concluded: "'[T]o be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice '<u>in connection with</u> the collection of any debt' or in an '<u>attempt</u> to collect any debt.''"  *Id.* (citing *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 123 (4th Cir. 2014)) (emphasis in *McCray*).

Writing for the panel in *McCray*, Judge Niemeyer also said, 839 F.3d at 361 (emphasis added):

> It is clear from the complaint in this case that *the whole reason that the White Firm and its members were retained by Wells Fargo was to attempt, through the process of foreclosure, to collect on the $66,500 loan in default.* McCray's complaint alleged that the White Firm is a "debt collection law firm" that mailed her a notice of intent to foreclose, which explicitly stated that it was attempting to collect on her debt, and that then filed a foreclosure action against her property.

The Supreme Court's decision in *Heintz v. Jenkins*, 514 U.S. 291 (1995), also provides guidance.  There, the Court considered whether a lawyer who regularly collected consumer debts through litigation activities could be considered a "debt collector" under the FDCPA.  *Id.* at 292. The Court observed: "To collect a debt or claim is to obtain payment or liquidation of it, either

by personal solicitation or legal proceedings."  *Id.* at 294 (quoting *Black's Law Dictionary* 263 (6th ed. 1990)).  Based on that definition, the Supreme Court declared, *Heintz*, 514 U.S. at 294: "In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts." *Accord Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 461 (6th Cir. 2013).

The Fourth Circuit's decision in *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), is also informative.  There, the borrower brought suit under the FDCPA against a law firm and a lawyer in connection with foreclosure proceedings initiated by the defendants. The defendants argued that they were not covered by the FDCPA, because foreclosure by a trustee under a deed of trust is a termination of the debtor's equity of redemption as to the debtor's property, not enforcement of an obligation to pay a debt.  *Id.* at 376.  Defendants wrote to the debtor, referencing the FDCPA and stating:  "'[T]his letter is an attempt to collect a debt.'" *Id.* at 374.  The letter also specified the amount of the debt and instructed the plaintiff to pay that amount.  *Id.* at 375.  The district court granted summary judgment to the defendants, concluding that "'[t]rustees foreclosing on a property pursuant to a deed of trust are not 'debt collectors' under the [Act].'"  *Id.*  The Fourth Circuit reversed.

The Court concluded that attorneys "acting in connection with a foreclosure can be 'debt collectors' under the Act . . . ."  *Id.*  It stated:   "We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods."  *Id.*  The Court reasoned that the "'debt' remained a 'debt' even after foreclosure proceedings commenced."  *Id.* at 376. Moreover, it observed that the defendants' arguments "would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt."  *Id.*

-15-

Defendants rely on *Gould v. Claimassist*, 876 F. Supp. 2d 1018, 1022 (S.D. Ill. 2012), for the proposition that they are not debt collectors. The opinion in *Gould* resolved a motion for summary judgment following the conclusion of discovery.

In *Gould*, plaintiff alleged that a hospital had transferred a medical debt of $3,453 to ClaimAssist for collection. *Id.* at 1020. ClaimAssist then sent Gould a letter that stated, *inter alia*, that Gould owed a balance of $3,453. *Id.* The letter also said, *id.* (alteration in original):

> ClaimAssist has partnered with Southern Illinois Healthcare *[sic]* to process this medical bill.
>
> As you may know, the paperwork associated with healthcare claims can be complex. ClaimAssist will work on your behalf in resolving this matter. Kindly complete the attached **Accident Information Form** and return in the envelope provided. You may also consider completing the form by using our website:
>
> http://www.ccsusa.com/claimassist/accidentform/
>
> Once we receive this information, we will prepare your claim and submit the required paperwork to your insurance company.
>
> If you have an attorney working on this claim, please send us their name, address, and telephone number. We will contact them to discuss the proper handling of this account.
>
> If you have any questions, or need more information, please feel free to contact me at the telephone number listed below. Thank you in advance for your prompt attention to this matter.

The court also considered the affidavit of the associate general counsel for the hospital, who explained the billing process and practices of the hospital. *See id.* at 1021. The trial court described the affidavit, stating, *id.* at 1018:

> Defendant specifically helps the Hospital process the third-party-payor claims that arise from motor-vehicle and work-related accidents. Then, when all claims have been processed by third-party payors, if a balance is still owed, the Hospital will bill the patient through a medical billing company. And at that point, if the patient does not pay, the Hospital may send the account to a collection agency. The Hospital uses a different company for collections, not defendant.

Of relevance here, the court stated that there was no evidence that ClaimAssist "ever obtained plaintiff's debt from the Hospital or that it otherwise acquired 'authority to collect the money on behalf of another.'" *Id.* at 1022. This, according to the court, was "reason enough to grant defendant's motion for summary judgment." *Id.* The court also noted that summary judgment was appropriate because plaintiff's debt was not in default when ClaimAssist sent the letter. *Id.* at 1023.

Given the content of the letter, and based on *facts* obtained *during discovery*, the court granted ClaimAssist's motion for summary judgment. 876 F. Supp. 2d at 1025. The district court said, *id.* at 1022:

> Plaintiff presents no evidence that defendant is a "business the principal purpose of which is the collection of any debts, or who regularly collects . . . debts owed or due . . . another." § 1692a(6). Further, [the general counsel for the hospital] specifically says the debt for plaintiff's medical services was still owed to the Hospital when it referred plaintiff's account to defendant.

According to ClaimAssist, "NWH's hospital debt, like the *Gould* obligation, was never assigned or transferred to ClaimAssist for collection from the Plaintiff." ECF 21 at 8. Defendants add that plaintiff here, like the plaintiff in *Gould*, "failed to provide any evidence illustrating that an assignment or transfer took place . . . ." *Id.* However, at this juncture, before any discovery has taken place, plaintiff is not required to produce evidence. Defendants' reliance on *Gould* is misplaced; the procedural posture of *Gould* makes it inapplicable.

Further, although the Complaint does not expressly allege that NWH assigned the debt to ClaimAssist, one can reasonably infer that ClaimAssist acquired authority to place the Hospital Lien on NWH's behalf. *See* ECF 1-1; *cf Gould*, 876 F. Supp. 2d at 1022. Moreover, the letter sent to the plaintiff in *Gould* did not notify him of the placement of a lien or in any way indicate that the creditor was seeking to collect on a debt. *See Gould*, 876 F. Supp. 2d at 1020. Rather, it

explained that ClaimAssist would work with plaintiff to resolve the balance by assisting him with the preparation and submission of paperwork to the plaintiff's insurance company.  *Id.*  The facial purpose of the letter in *Gould* – to assist the debtor in filing the necessary paperwork with an insurance company – is hardly comparable to the facial purpose of the Letter here — to notify plaintiff of the Hospital Lien, based on money that she owed.  *Compare id. with* ECF 1-1.

In her Complaint, Garner asserts, *inter alia*, that ClaimAssist "holds itself out, in publicly available documents, as providing 'recovery services' . . . 'for the health care industry.'"  ECF 1, ¶ 5.  In addition, ClaimAssist's "'customer service representatives . . . actively negotiate and settle outstanding alleged debt amounts on behalf of ClaimAssist, LLC's retaining medical provider clients.'"  *Id.*  Moreover, the allegations in the Complaint, including the Letter, indicate that ClaimAssist was retained by NWH to place a hospital lien in order to collect the $801.16 that NWH claimed was due from plaintiff.  *See* ECF 1-1 at 2.

Notably, the Letter included the name and address of the creditor (NWH); the amount due of $801.16; the hospital stay from which the debt arose (May 16, 2014); and that ClaimAssist had lodged a lien to recover the "customary charges for hospital care and treatment of the above named injured patient in the sum hereinabove claimed to be due."  ECF 1-1 at 2.  Moreover, the Letter was sent more than eleven months after Garner was discharged from the Hospital, which reasonably allows for the inference that Garner's payment was past due.  *See* ECF 1-1.  ClaimAssist secured the lien; it did not merely advise NWH on how to place the lien.  *See* ECF 1-1; ECF 1 ¶¶ 11-12; *see also* ECF 21 at 8 ("With respect to Plaintiff, ClaimAssist placed the lien and provided notice of NWH's lien to Attorney Greene, comporting with Maryland lien notice requirements.").

In sum, accepting the allegations in the Complaint as true, and viewing the allegations in the Complaint and the Letter in the light most favorable to the plaintiff, Garner has adequately alleged that ClaimAssist is a "debt collector" within the meaning of the FDCPA. The facts alleged are sufficient to support plaintiff's claim that "defendants' activities were taken <u>in connection with</u> the collection of a debt or in <u>an attempt</u> to collect a debt." *McCray*, 839 F.3d at 361 (emphasis in *McCray*). The Complaint also adequately alleges that ClaimAssist "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

**B.**

ClaimAssist contends that it was not acting to collect a debt. Rather, it merely complied with obligations under Maryland law to provide a statutorily required notice of a Hospital Lien.

ClaimAssist states: "NWH hired ClaimAssist for the purpose of complying with state-specific lien requirements, among other things, including placing the liens and providing notice of the liens as required by statute." ECF 21 at 8. Moreover, ClaimAssist contends that it "placed the lien and provided notice of NWH's lien to Attorney Greene, comporting with Maryland lien notice requirements." *Id.* In addition, ClaimAssist asserts that its "communication with the Plaintiff was not in furtherance of a collection from the Plaintiff, but was only to provide statutorily required notice," pursuant to Md. Code (2013 Repl. Vol., 2016 Supp.), § 16-601 *et seq.* of the Commercial Law Article ("C.L.") ("Hospital Lien Statute").

C.L. § 16-601(a) provides:

A hospital which furnishes medical or other services to a patient injured in an accident not covered by the Maryland Workers' Compensation Act[] has a lien on 50 percent of the recovery or sum which the patient or, in case of death, the heirs or personal representative of the patient collect in judgment, settlement, or compromise of the patient's claim against another for damages on account of the injuries.

C.L. § 16-602 is also pertinent.  It states:

(a) A lien is not effective under this subtitle unless, before payment of any money to the patient, his attorney, heirs, or personal representative as compensation for the injuries, the hospital:

> (1) Files a notice of lien with the clerk of the circuit court of the county where the medical or other services were provided; and

> (2) Sends a copy of the notice of lien and a statement of the date of its filing by registered or certified mail to the person alleged to be liable for the injuries received by the patient.

(b) The notice of lien shall be in writing and shall contain:

> (1) The name and address of the injured patient;

> (2) The date of the accident;

> (3) The name and location of the hospital;

> (4) The amount claimed; and

> (5) The name of the person alleged to be liable for the injuries received.

(c) The hospital also shall send a copy of the notice of lien by registered or certified mail to any insurance carrier known to insure the person alleged to be liable for the injuries received by the patient.

According to ClaimAssist, its "purpose in sending the letter at issue was to provide notice of claims in accordance with the requirements" of the Hospital Lien Statute.  ECF 21 at 11. ClaimAssist maintains that the Letter "adheres to all of the requirements established by" the Hospital Lien Statute.  *Id.*  ClaimAssist also points out: "Substantial portions of the Letter are taken verbatim from the Maryland Hospital Lien Law." *Id.* at 12.  Thus, ClaimAssist concludes that "it simply is not plausible that Plaintiff's counsel could have interpreted the Letter as attempting to do anything" other than to provide a "statutorily required notice of claim . . . ." *Id.*

That the Letter cites the Maryland Hospital Lien Statute and was sent in compliance with that statute does not remove it from the scope of the FDCPA or preclude the determination that ClaimAssist was acting in connection with the collection of a debt.  As plaintiff points out, the

Letter could constitute "*both* debt collection and state-lien-related activities – they are not mutually exclusive." ECF 26-1 at 25 (emphasis in ECF 26-1).

Again, *McCray,* 839 F.3d 354, provides guidance. One of the communications at issue in *McCray* was a notice of intent to foreclose, which is required by Maryland law before the initiation of foreclosure proceedings. *Id.* at 357; *see* Md. Code (2015 Repl. Vol. 2016 Supp.) § 7-105.1(c) of the Real Property Article ("R.P.") ("[A]t least 45 days before the filing of an action to foreclose a mortgage or deed of trust on residential property, the secured party shall send a written notice of intent to foreclose to the mortgagor or grantor and the record owner."). The district judge concluded that the plaintiff failed to allege facts sufficient to show defendants were debt collectors, and it granted motions to dismiss, *inter alia*, the FDCPA claims. *Id.* at 357-58. Notwithstanding that the law firm was statutorily obligated to send the notice, the Fourth Circuit determined that, viewing the facts in the light most favorable to plaintiff, the plaintiff adequately alleged that defendants were debt collectors. *Id.* at 361. It reasoned that it was "clear from the complaint . . . that the whole reason that the [law firm] and its members were retained by [the creditor] was to attempt, through the process of foreclosure, to collect on the $66,500 loan in default." *Id.* at 360.

In view of the foregoing, I am not persuaded by ClaimAssist's argument that its efforts to comply with the Maryland Hospital Lien Statute preclude the determination that it is a debt collector. Defendants have not pointed to any authority suggesting that a debt collector's compliance with a state law notice requirement obviates a claim under the FDCPA based on such conduct. As indicated, the Fourth Circuit in *McCray* determined that the plaintiff there had adequately alleged that a notice of intent to foreclose was a debt collection activity within the

FDCPA, despite the fact that State law required dissemination of the notice.  *McCray*, 839 F.3d

354, 357-58; R.P. § 7-105.1(c).  The same logic applies here.

### C.

Defendants argue that ClaimAssist's Letter was not within the scope of the FDCPA

because the communication was not "in connection with the collection of any debt."  ECF 21 at

12-15; *see* 15 U.S.C. § 1692g(a).  They claim that the Letter lacks certain features associated

with attempts to collect a debt.  Defendants argue, *id.* at 13-14 (emphasis in original):

> Critically, the Letter *never solicited payment* from Plaintiff. On the face of the
> Letter, it is beyond credible dispute, that ClaimAssist was not seeking payment of
> a debt obligation owed by Plaintiff to NWH. For example, the Letter does not
> contain a "due date" by which a payment must be made. Furthermore, there is no
> mention of acceptable methods for making payment (check, money order, credit
> card, etc.) or the entity to which the check or money order should be addressed.
> Moreover, Plaintiff and ClaimAssist did not have a relationship prior to Plaintiff's
> counsel's receipt of the Letter. Therefore, dismissal is warranted for the plain
> reason that the Letter giving rise to the claims in the Complaint is not a
> communication subject to the FDCPA.

According to defendants, "the information that is actually included in the Letter makes it

very clear that ClaimAssist was doing nothing more than providing Plaintiff's counsel with

statutorily required notice that it had filed a lien."  ECF 21 at 14.  And, defendants note that the

Letter cited the Maryland Hospital Lien Statute.  *Id.* at 14-15.  Thus, defendants contend that "the

Letter was an attempt to provide notice, as required by 'Title 16 S16-601', rather than an attempt

to collect a debt."  *Id.* at 15.[4]

Two provisions of the FDCPA are relevant in considering defendants' contention.

Section § 1692e of 15 U.S.C., titled "False or misleading representations," provides: "A debt

collector may not use any false, deceptive, or misleading representation or means *in connection*

---

[4] I note that the nature of the review of claims under the FDCPA requires the review of
the same arguments in multiples contexts.

*with the collection of any debt*."   (Emphasis added).   And, 15 U.S.C. § 1692f, titled "Unfair

practices", provides: "A debt collector may not use unfair or unconscionable means *to collect or*

*attempt to collect any debt*."   (Emphasis added).   Thus, "to be actionable under these provisions

of the FDCPA, a debt collector needs only to have used a prohibited practice '*in connection with*

the collection of any debt' or in an '*attempt* to collect any debt' . . . ."   *Powell*, *supra*, 782 F.3d at

124; *see also Glazer*, 704 F.3d at 461 ("[I]f a purpose of an activity taken in relation to a debt is

to 'obtain payment' of the debt, the activity is properly considered debt collection.").

The Fourth Circuit has identified several factors for courts to consider in determining

whether a communication constitutes an attempt to collect a debt.   In particular, the Fourth

Circuit has said: "Determining whether a communication constitutes an attempt to collect a debt

is a 'commonsense inquiry' that evaluates the 'nature of the parties' relationship,' the [objective]

purpose and context of the communication[ ],' and whether the communication includes a

demand for payment."   *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (quoting *Gburek v.*

*Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010)) (alterations in *Dubois*).

The Fourth Circuit's opinion in *Powell*, *supra*, 782 F.3d 119, provides guidance.   In

*Powell*, the district court granted summary judgment to the defendants, concluding that the mere

filing of an Assignment of Judgment did not constitute a debt collection activity within the reach

of the FDCPA.   *Id.* at 120.   The district court reasoned that "the Assignment of Judgment did not

contain a demand for payment and was not filed to induce payment."   *Id.* at 123.   Although the

district court noted that "the Assignment of Judgment 'was a step to ultimately collecting the

debt,' it nonetheless emphasized that 'the Defendants would [still] have had to take separate

action to collect any money from [plaintiff].'"   *Id.* (first alteration in *Powell*, second alteration

added).

-23-

The Fourth Circuit concluded that the filing of an Assignment of Judgment qualified as a debt collection activity within the reach of the FDCPA. *Id.* at 121. Therefore, it vacated and remanded. *Id.*

The Court rejected the argument that, to be within the scope of the FDCPA, a communication must include a demand for payment or be part of an action designed to induce debtor to pay. It said, *id.* at 123: "It is apparent that nothing in this language *requires* that a debt collector's misrepresentation be made as part of an express demand for payment or even as part of an action designed to induce the debtor to pay." (Emphasis in *Powell*). It reasoned that the state court judgment, the writ of garnishment entered by the state court, and the assignment of the judgment were all "steps taken to collect [plaintiff's] debt." *Id.* at 124. According to the Fourth Circuit, it could "hardly be disputed that when a person files an assignment of judgment in a debt collection action so as to be able to execute on the judgment, the person has taken action *in connection* with the collection of the judgment debt or as part of *an attempt* to collect the judgment debt." *Id.* (emphasis in *Powell*).

Defendants attempt to distinguish *Powell* on the basis that the Letter does not seek to obtain payment from Garner, but rather informs her that a lien was placed and that NWH "'would be paid out of any **recovery funds**' from the tortfeasor, not from Plaintiff." ECF 27 at 10 (emphasis in ECF 27). And, defendants point out features of debt collection notices that are not present in the Letter. However, defendants fail to acknowledge the significance of the features that *are* present on the face of the Letter. As noted, the Letter lists the name of the creditor (NWH); the amount due ($801.16); that the cost was incurred more than eleven months earlier (May 16, 2014); and that ClaimAssist had placed a lien under the Hospital Lien Statute to recover that debt. These features would seem to indicate that the Letter was sent in *connection*

with an attempt to collect a debt.  *Powell*, *supra*, 782 F.3d at 124.  And, the Letter can also be characterized as an activity "in relation to" obtaining payment of a debt.  *See Glazer*, 704 F.3d at 461; *see also McCray*, 839 F.3d 354 (determining that a law firm's act of mailing a notice of intent to foreclose could be a debt collection activity under the FDCPA).

Moreover, defendants argue that the lien is against third-party tortfeasors, rather than Garner.  Plaintiff asserts: "Ms. Garner owed the debt to NWH, which was the debt Defendants were . . . attempting to collect on behalf of their principal, NWH."  ECF 26-1 at 28 n. 19.  In other words, that ClaimAssist placed a lien on any judgment that would otherwise be paid to Garner, rather than demanding money directly from Garner, does not place the Letter outside the scope of the FDCPA.  Rather, the Letter informing Garner of the placement of the lien can be considered to be "in connection with the collection of [a] debt."   15 U.S.C.  § 1692g(a).  Moreover, as indicated, the fact that the Letter was sent for the purpose of complying with the Maryland Hospital Lien Statute does not remove it from the scope of the FDCPA.

The Fourth Circuit and other courts have not found a distinction between collecting funds directly and collecting funds through other legal means.  For example, in *Wilson*, 443 F.3d at 376, the Fourth Circuit determined that the FDCPA applied to a law firm retained for the purpose of foreclosing on real property, finding "no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods."  *Id.*; *see also McCray*, 839 F.3d at 360 (quoting *Wilson*); *Piper v. Portnoff Law Assocs. Ltd.*, 396 F.3d 227 (3d Cir. 2005) (concluding that the fact that a state law "provided a lien to secure the [plaintiffs'] debt does not change its character as a debt").

In sum, ClaimAssist sent a Letter to Garner, via her lawyer, which provided that Garner owed $801.16 to NWH, that she incurred the expense more than eleven months earlier, and that a

lien had been placed against any recovery that she could receive in a tort action arising from the Collision. *See* ECF 1-1. Viewing the facts alleged in the Complaint in the light most favorable to plaintiff, she has adequately alleged that the Letter was sent "*in connection with* the collection of any debt' or in an '*attempt* to collect any debt' . . . ." *Powell*, *supra*, 782 F.3d at 124 (emphasis in *Powell*). The fact that the Letter never asked plaintiff to make a payment does not take it outside the scope of the FDCPA.

### D.

Finally, defendants contend that Garner cannot state a claim under the FDCPA because ClaimAssist's Letter was not a "communication" to collect a "debt" within the meaning of the FDCPA. ECF 21 at 15-16.

The FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). And, the FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "As long as the transaction creates an obligation to pay, a debt is created." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997).

The Fourth Circuit's decision in *Wilson*, 443 F.3d 373, provides insight. As discussed earlier, the *Wilson* Court considered whether a law firm that had been retained by a mortgagee to foreclose on a home could be considered a "debt collector" under the FDCPA. *Id.* at 375-77. The defense claimed that it could not be considered a "debt collector" because it was not acting "in connection with a 'debt.'" *Id.* at 376. In particular, defendants argued that "foreclosure by a

trustee under a deed of trust is not the enforcement of an obligation to pay money or a 'debt,' but is a termination of the debtor's equity of redemption relating to the debtor's property." *Id.*

The *Wilson* Court rejected defendants' argument and determined that the "'debt' remained a 'debt' even after foreclosure proceedings commenced."   *Id.* (citing *Piper*, 396 F.3d at 234).   The Court reasoned, *id.* (emphasis added):

> Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. *We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.*

The decision of the Third Circuit in *Piper*, *supra*, 396 F.3d 227, is also noteworthy. There, the court considered whether a law firm's attempt to collect money from a plaintiff, based on the plaintiff's failure to pay water and sewer bills, fell within the scope of the FDCPA.   *Id.* at 233-34.   The defendants argued that their activities were not within the scope of the FDCPA because they were trying to enforce a lien created by state law.   *Id.* at 234.   The *Piper* Court concluded that the activity was within the scope of the FDCPA because the plaintiffs' "consumption of water created a personal debt that could be collected in an action in assumpsit. The fact that the [state law] provided a lien to secure the Pipers' debt does not change its character as a debt or turn [defendant's] communications to the Pipers into something other than an effort to collect that debt."   *Id.*

Under the language of the FDCPA, plaintiff has adequately alleged that the $801.16 that ClaimAssist asserted was due to NWH from Garner was a "debt."   That the debt is sought to be collected by way of a lien, *Piper*, 396 F.3d 227, or a foreclosure, *Wilson*, 443 F.3d 373, does not take the obligation outside of the definition of "debt."

And, plaintiff has adequately alleged that the Letter was a "communication" as defined by 15 U.S.C. § 1692a(2).   First, the Letter conveyed information.   It stated, *inter alia*, that ClaimAssist had obtained a hospital lien and that $801.16 was due to NWH.   ECF 1-1. Furthermore, the information in the Letter pertained to a sum ($801.16) that was due because of Garner's treatment at the Hospital on May 16, 2014).[5]   And, the Letter was sent "to any person through any medium."

## V.     Conclusion

In sum, viewing the facts in the Complaint in the light most favorable to plaintiff, Garner has alleged facts sufficient to state a claim against ClaimAssist under the FDCPA. Accordingly, I shall DENY the Motion.   An Order follows, consistent with this Memorandum Opinion.


Date:   March 22, 2017                                     _____/s/_____
                                                          Ellen L. Hollander
                                                          United States District Judge

---

[5] Defendants point to the opinion in *Jackson-Spells v. Francis*, 45 F. Supp. 2d 496 (D. Md. 1999) (Davis, J.), in support of their position.   But, the facts in *Jackson-Spells* are distinguishable, and that case was decided well before the Fourth Circuit's decision in *McCray*, 839 F.3d 354.