IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESSICA GARNER,
Individually and on behalf of all others
similarly situated,

    *Plaintiff*,

    *v.*

CLAIMASSIST, LLC, *et al.*

    *Defendants*.

Civil Action No. ELH-16-1260

## MEMORANDUM OPINION

Plaintiff Jessica Garner, individually and on behalf of all others similarly situated, initiated suit against defendants ClaimAssist, LLC ("ClaimAssist"); Credit Control Services, Inc. ("CCS"); and CCS Financial Services, Inc. ("CCS Financial"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), codified, as amended, at 15 U.S.C. §§ 1692 *et seq.* ECF 1 ("Complaint"). Garner alleges that ClaimAssist is a debt collector that violated the FDCPA by making false representations and using deceptive or misleading means in an attempt to collect a debt from plaintiff. *Id.* According to plaintiff, ClaimAssist, CCS, and CCS Financial operate, in effect, as a single entity. *See id.*

Defendants have moved for summary judgment (ECF 57), supported by a memorandum of law (ECF 57-1) (collectively, the "Summary Judgment Motion") and exhibits (*see* ECF 57-2 through ECF 57-10). The Summary Judgment Motion also seeks "sanctions", in the form of costs and attorneys' fees, under 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927. *See* ECF 57-1 at 5. Plaintiff opposes the Summary Judgment Motion (ECF 65), supported by a memorandum of law (ECF 65-1) and exhibits. *See* ECF 65-2 through ECF 65-18. Defendants have replied. *See*

ECF 66.[1]

Additionally, plaintiff has filed a "Motion To Certify A Class, Appoint Named Plaintiff As Class Representative, And Appoint Class Counsel" (ECF 62), supported by a memorandum of law (ECF 62-1) (collectively, the "Motion to Certify") and exhibits. *See* ECF 62-2 and ECF 62-3. Defendants oppose the Motion to Certify as to CCS and CCS Financial, but not as to ClaimAssist. *See* ECF 64. Plaintiff has replied (ECF 67) and provided additional exhibits. *See* ECF 67-1 through ECF 67-6.

Further, defendants have filed a "Motion for Rule 11 Sanctions" (ECF 63), supported by a memorandum of law (ECF 63-1) (collectively, the "Motion for Sanctions") and exhibits. *See* ECF 63-3 through ECF 63-12. The Court did not request a response (*see* Local Rule 105.8(b)), and plaintiff has not filed one.[2] For the purpose of judicial economy, I shall consider the sanctions requested in the Summary Judgment Motion (ECF 57) together with the Motion for Sanctions (ECF 63).

The motions are fully briefed, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall grant defendants' Summary Judgment Motion as to the FDCPA claims, but deny the request for sanctions. Because I shall grant the Summary Judgment Motion as to the FDCPA claims, plaintiff's Motion to Certify shall be denied, as moot.

---

[1] By Memorandum Opinion (ECF 37) and Order (ECF 38) of March 22, 2017, I denied defendants' motion for judgment on the pleadings. ECF 20.

[2] As noted, the Summary Judgment Motion also seeks "sanctions" in the form of attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927. *See* ECF 57, ¶¶ 26-28; *see also* ECF 57-1 at 4-5. Additionally, the "wherefore" clause of the Summary Judgment Motion (ECF 57 at 7) requests "reasonable attorneys' fees and costs pursuant to 18 U.S.C. § 1692(k)." However, Title 18 of the United States Code does not contain a section "1692(k)." And, 18 U.S.C. § 1692 provides: "Every foreign mail, while being transported across the territory of the United States under authority of law, is mail of the United States[.]" Accordingly, defendants' reference to "18 U.S.C. § 1692(k)" appears to be made in error.

Further, I shall deny defendants' Motion for Sanctions.

## I.    Factual Background[3]

On May 16, 2014, Garner was injured during a motor vehicle accident in Baltimore (the "Accident"). *See* ECF 57-2 (the Complaint), ¶ 9. On that day, she received medical treatment at Northwest Hospital ("NWH" or the "Hospital") for injuries arising from the Accident. ECF 57-3 (Deposition of William Rew, Director of Patient Financial Services for LifeBridge Health, Inc.) at 30. As a result, Garner incurred a bill from the Hospital. ECF 57-2 at 23-24.

In connection with the Accident, Garner retained a lawyer, Michael Greene, to represent her in a tort case. Greene now represents Garner in this FDCPA action.

ClaimAssist is a limited liability company, formed under the laws of Delaware, with its principal office in Newton, Massachusetts. ECF 1, ¶ 5; *see also* ECF 57-2, ¶ 5. CCS and CSS Financial are also Delaware corporations that maintain their principal offices in Newton, Massachusetts. ECF 1, ¶¶ 6-7. According to plaintiff, defendants "improperly disregard corporate formalities" and, in effect, operate as a single entity. *Id.*; *see also* ECF 65-1 at 13.

According to the Affidavit of William Rew (ECF 57-4), the Director of Patient Financial Services for LifeBridge Health, Inc. ("LifeBridge"), LifeBridge is the "sole member (the corporate 'parent') of Northwest Hospital Center, Inc." *Id.* ¶ 2. Rew avers that, as the Director of Patient Financial Services for LifeBridge, he is both "familiar with Northwest Hospital's billing procedures" (*id.*) and "responsible for them." ECF 57-3 at 30.

In January 2010, LifeBridge hired ClaimAssist "to assist in the collection of auto liability accounts." ECF 57-3 at 23-24; *see also* ECF 65-2 ("Claim Processing Service Agreement", dated January 1, 2010) (hereinafter, the "ClaimAssist Agreement"). Notably, ClaimAssist was

---

[3] The factual and procedural background is limited to those matters of relevance to the motions.

hired "exclusively . . . to collect recovery from third-party sources[.]"  ECF 57-3 at 46.

Rew explained that an auto liability account at the Hospital is typically paid by a third-party, such as an insurer or a tort litigant.  ECF 57-3 at 24.  Pursuant to the ClaimAssist Agreement, the Hospital transferred auto liability accounts to ClaimAssist, allowing ClaimAssist to "identify the payer responsible and to pursue recovery from that [third-party] payer."  *Id.* at 24.  Upon transfer of an account, ClaimAssist would "contact[] the patient on the hospital's behalf to gather the information to seek reimbursement" from the proper third-party payer.  ECF 57-3 at 25.

The transfer of accounts to ClaimAssist occurred once per week.  *Id.* at 36.  Notably, when auto liability accounts were transferred to ClaimAssist, they were "pre-collection", meaning they were not yet in default.  *Id.* at 68-69.

On May 24, 2014, eight days after Garner received medical treatment at the Hospital, her account was transferred to ClaimAssist, pursuant to the ClaimAssist Agreement, because Garner's medical treatment related to an automobile accident.  ECF 57-3 at 23-24, 31-32, 35; *see also* ECF 65-2; ECF 57-3 at 36-37.  Of import here, when Garner's account was transferred to ClaimAssist, it was not in default.  ECF 57-4, ¶ 3; ECF 57-3 at 66-68.

According to Rew, ClaimAssist was not hired to collect any debt directly from Garner.  ECF 57-3 at 38; *see also* ECF 57-4, ¶ 4.  Rather, ClaimAssist was hired to identify the proper third-party payer in regard to Garner's account.  ECF 57-3 at 46.

On April 28, 2015, ClaimAssist sent a letter to Greene, Garner's tort lawyer.  ECF 57-2 at 23-34 (the "Letter").  The Letter stated that a lien had been lodged against plaintiff on behalf of Northwest Hospital.  *Id.*; *see* ECF 1, ¶¶ 11, 12, 27, 28.  Page one of the Letter provided, *id.* at 23:

Dear MR GREEN [sic],

The attached is a copy of the lien in which [sic] NORTHWEST HOSPITAL has filed with BALTIMORE CITY CIRCUIT COURT.

This is to inform you that we statutorily attach a hospital lien to any funds that an injured patient may receive as reimbursement as a result of an accident or injury.

Title 16 S16-601 is the Maryland Statute providing the legal means of insuring payment of the injured person's hospital bill. The lien is filed when the possibility exists that other persons, firms or corporations may be liable for damages caused to the patient.

An example would be if a person was injured in an automobile accident and an insurance company was expected to cover the related hospital expenses, the hospital would file a lien to insure that they would be paid out of any recovered funds.

The patient and/or person or company who appear on the lien is provided a copy of said lien by certified mail.

Please let me know if you have any questions about this procedure.

Sincerely,
RAJA KHOURY

Page two of the Letter is titled "NOTICE AND CLAIM OF HOSPITAL LIEN." ECF 57-2 at 24. A facsimile of page two of the Letter appears below. However, I have deleted the references to plaintiff's address.

Please Return to:  NORTHWEST HOSPITAL
C/o ClaimAssist
2 Wells Avenue
Newton MA 02459

## NOTICE AND CLAIM OF HOSPITAL LIEN

OUR CLAIM: 2223888
Name of Claimant Hospital: NORTHWEST HOSPITAL
Address of Hospital: 2401 W. BELVEDERE AVE  BALTMORE  MD 21215
Name of Executive Officer or Agent of Hospital: Raja Khoury        Telephone # 800-875-5808  EXT. 2496
Address of Executive Officer or Agent of Hospital: 2 Wells Avenue, Newton, Mass  02459
Name and address of Patient:  JESSICA  GARNER
Date of Patient Admission:        5/16/2014  Date of Patient's Discharge: 5/16/2014
Amount due for care of  $801.16
County in which injuries were treated: BALTIMORE
To the best of claimant's knowledge the names and addresses of all persons, firms or corporations
and the insurance carriers of said persons, firms or corporations claimed by the above named patient,
or by his or her legal representative, to be liable for damages are as follow

JESSICA  GARNER
No other responsible parties identified as this time.

The above named hospital pursuant to laws of the State of Maryland in such cases made and provided, does hereby
claim a lien upon any and all causes of action, suits, claims, counter-claims, or demands for damages accruing to the
patient named herein, or to the legal representative of such patient, on account of injuries giving rise to such causes
of action and which necessitated his or her hospitalization, for its customary charges for hospital care and treatment
of the above named injured patient in the sum hereinabove claimed to be due. The name and address of the patient
as hereinbefore set forth are as the same appear on the records of the hospital.

Executive Office or Agent of
Hospital

STATE OF MARYLAND

County of BALTIMORE

} ss

RAJA KHOURY being first duly sworn, upon oath deposes and says: That he/she is the Executive Officer or Agent
of NORTHWEST  Hospital and makes this Notice and Claim of Lien for and on behalf of said hospital, being
hereunto duly authorized: that the matters and things contained in the foregoing notice and claim of Lien are true.

Subscribed and sworn to before me on this  4/28/2015

My Commission expires:  May 30 2019

Date of filing: _____        Hour of filing: _____

No. _____

Page two of the Letter reflects, *inter alia*, Garner's name and address; provides that

Garner was admitted to the Hospital on May 16, 2014; and indicates that she was discharged

from the Hospital on the same date. ECF 57-2 at 24. Further, the Letter indicates: "Amount due [to NWH] for care of $801.16." *Id.*

The Letter identified NWH as the "Claimant Hospital" and Raja Khoury, who signed page one of the Letter on behalf of ClaimAssist, as the "Executive Officer or Agent of Hospital." *Id*. at 23-24. The Letter also included the following statement, *id.* at 24:

> The above named hospital pursuant to laws of the State of Maryland in such cases made and provided, does hereby claim a lien upon any and all causes of action, suits, claims, counter-claims, or demands for damages accruing to the patient named herein, or to the legal representative of such patient, on account of injuries giving rise to such causes of action and which necessitated his or her hospitalization, for its customary charges for hospital care and treatment of the above named injured patient in the sum hereinabove claimed to be due.

In addition, the Letter provided, *id.*: "No other responsible parties identified at this time."

According to the Complaint, the Letter inaccurately stated that plaintiff owed $801.16 to NWH. *See* ECF 1, ¶ 12. Garner does not dispute that a debt was owed to the Hospital. *See* ECF 65. But, she claims that she had "health insurance (and/or other contractual / legal relationship) with Aetna insurance . . . and U.S. Medicare . . ." and the Hospital and ClaimAssist were legally required to process the bill for Hospital services consistent with NWH's agreements with Aetna and Medicare. ECF 1, ¶ 12. According to Garner, the bill had not been processed as of April 28, 2015. *Id.* Therefore, "the alleged debt amount of $801.16 was plainly false, inaccurate, deceptive, and/or misleading (including by being not certain, and known to be so)." *Id.*

On May 31, 2011, LifeBridge formed a separate agreement with CCS (the "CCS Agreement"). *See* ECF 57-3 at 23; *see also* ECF 65-6 ("CCS Collection Agreement", dated May 31, 2011). Pursuant to the CCS Agreement, CCS provided debt collection services as to accounts that were initially transferred from LifeBridge to ClaimAssist but later fell into default. *See* ECF 57-3 at 41; ECF 57-3 at 55-56. Rew averred that ClaimAssist attempted to exhaust

"insurance opportunities" to satisfy a medical bill before transferring an account to CCS. ECF 57-3 at 55. If ClaimAssist was unable to recover funds from a third-party, "at some point ClaimAssist transfer[ed] that account or refer[ed] that account to CCS . . . [f]or collection." *Id.* at 55-56. According to Rew, an account was only transferred from ClaimAssist to CCS if the account was "in default or in collections." *Id.* at 56-57.

Rew stated at his deposition that "[a]t some point" during an unspecified month or year, ClaimAssist transferred Garner's account to CCS. ECF 57-3 at 41-42. Counsel for plaintiff did not inquire further as to the transfer of the account. And, that transfer is not addressed in plaintiff's Opposition.

Additional facts are included in the Discussion.

## II.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Formica v. Aylor*, ___ F. App'x ___, 2018 WL 3120790, at *7 (4th Cir. June 25, 2018); *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). But, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at

249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

In sum, to avoid summary judgment, there must be a genuine dispute as to material fact. In *Iraq Middle Mkt. Dev. Found.*, 848 F.3d at 238, the Court reiterated: "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."

### III. The FDCPA

Congress enacted the Fair Debt Collection Practices Act in 1977 (*see* Pub. L. 95–109, 91 Stat. 874 (1977)) to protect consumers from debt collectors who engage in "abusive, deceptive, and unfair debt collection practices" to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see Henson v. Santander Consumer USA, Inc.*, ___ U.S. ___, 137 S. Ct. 1718, 1720 (2017) (stating that the FDCPA "authorizes private lawsuits and weighty fines designed to deter wayward collection practices"); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559

-10-

U.S. 573, 576 (2010); *Ben-Davies v. Blibaum & Assoc., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017); *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). The statute is concerned with "rights for consumers whose debts are placed in the hands of professional debt collectors . . . ." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009).

"A significant purpose of the Act" is the elimination of "abusive practices by debt collectors . . . ." *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006); *see also Moore v. Blibaum & Assoc., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017). Because the FDCPA is a remedial statute, it is construed liberally in favor of the debtor. *Brown*, 464 F.3d at 453; *see, e.g.*, *Russell v. Absolute Collection Servs., Inc*., 763 F.3d 385, 393 (4th Cir. 2014) (recognizing the canon of statutory interpretation that remedial statutes are to be construed liberally) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987)); *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3d Cir. 2012); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).

To establish a claim under the FDCPA, "a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)); *see Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 625 (D. Md. 2014); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012). "Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees." *Russell*, 763 F.3d at 389 (citing 15 U.S.C. § 1692k(a)(1), (a)(3)). "The FDCPA also provides the potential for

statutory damages up to $1,000 subject to the district court's discretion." *Russell*, 763 F.3d at 389 (citing 15 U.S.C. § 1692k(a)(2)(A)).

The FDCPA defines "debt" as "an obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject to the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1682a(5). And, the FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *see also Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208-09 (9th Cir. 2013); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000). Thus, the original creditor is not a debt collector. *Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir. 2011).

As the Supreme Court said in *Henson*, 137 S. Ct. at 1721: "[T]he Act defines debt collectors to include those who regularly seek to collect debts 'owed . . . *another*.' And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself." (Emphasis added). Accordingly, "[a]ll that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for 'another.'" *Id.* Therefore, an entity that formally acquires a debt from the original creditor becomes the owner of the debt, and may collect on the acquired debt without being a "debt collector" under the FDCPA, because the purchasing party is not collecting on behalf of "another." *Id.* at 1722.

Title 15 of the United States Code provides, at § 1692e(10): "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection

of any debt.  Without limiting the general application of the foregoing, the following conduct is a

violation of this section: . . . (10) The use of any false representation or deceptive means to

collect or attempt to collect any debt or to obtain information concerning a consumer."  Further,

§ 1692f states, in pertinent part: "A debt collector may not use unfair or unconscionable means to

collect or attempt to collect any debt."  Additionally, 15 U.S.C. § 1692j(a) makes it "unlawful to

design, compile, and furnish any form knowing that such form would be used to create the false

belief in a consumer that a person other than the creditor of such consumer is participating in the

collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when

in fact such person is not so participating."

A "creditor" is defined as "any person who offers or extends credit creating a debt or to

whom a debt is owed, but such term does not include any person to the extent that he receives an

assignment or transfer of a debt in default solely for the purpose of facilitating collection of such

debt for another."  15 U.S.C. § 1692a(4).  Generally, entities servicing or collecting a debt they

were assigned before default are considered "creditors" under the Act.  *See Schlosser v.

Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *see also* 15 U.S.C. § 1692a(4); *id.* §

1692a(6)(F)(iii); *Ruth*, 577 F.3d at 796.

The Fourth Circuit has noted that § 1692a(6)(F) "defines the classes of persons that are

excluded from the definition of debt collector, so that a person who meets one of the definitions

. . . will not qualify as such[.]"  *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136

(4th Cir. 2016), *aff'd*, *Henson*, 137 S. Ct. 1718.  Of import here, under the Act, the definition of

"debt collector" does not include an entity that is "collecting or attempting to collect any debt . . .

to the extent such activity . . . (iii) concerns *a debt which was not in default at the time it was

obtained by such person* . . . ."  15 U.S.C. § 1692a(6)(F) (emphasis added).  "To simplify, this

exclusion means that a person collecting nondefaulted debts on behalf of others is not a debt collector. This exclusion was intended by Congress to protect those entities that function as loan servicers for debt not in default." *Id.*

"The structure of the Act suggests" that an entity receiving or attempting to collect money due on a debt "must be one or the other," that is, either a debt collector or a creditor. *Schlosser*, 323 F.3d at 538. Creditors and debtors are generally "mutually exclusive" categories under the FDCPA. *Schlosser*, 323 F.3d at 536; *see F.T.C. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) ("[A]s to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive."); *accord*, *e.g.*, *Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 348 (E.D. Va. 2011).

The status of the entity, *i.e.*, debt collector or creditor, is determined with respect to the particular debt at issue and depends on the purpose for which the entity is assigned the debt. *See* 15 U.S.C. § 1692a(4) (excluding from definition of "creditor" a person who "receives an assignment or transfer of *a debt* in default *solely for the purpose of facilitating collection* of such debt for another") (emphasis added); *id.* § 1692(a)(6)(F)(iii) (excluding from definition of "debt collector" a person who is collecting "any debt . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained . . . ."). "If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt." *Schlosser*, 323 F.3d at 536. "On the other hand, if [the entity] simply acquires the debt for collection, it is acting more like a debt collector." *Id.* And, "[t]o distinguish between these two possibilities, the Act uses the status of the debt at the time of the assignment . . . ." *Schlosser*, 323 F.3d at 536; *see also* 15 U.S.C. § 1692a(4); *id.* § 1692a(6)(F)(iii); *Ruth*, 577 F.3d at 796 ("'Where, as here, the party seeking to collect a debt did not originate it but instead acquired it

-14-

from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired.'").

In *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354 (4th Cir. 2016), the Fourth Circuit considered, *inter alia*, whether a law firm retained to foreclose on a home following a default on a mortgage could be considered a "debt collector" under the statute. *Id.* at 358-59. The law firm claimed that it should not be considered a debt collector because plaintiff had "'failed to plead any facts indicating that [the firm] had made <u>any demands for payment</u>, or that they in any way communicated deadlines and penalties for McCray's failure to make any payment.'" *Id.* at 359 (emphasis and alteration in *McCray*). And, the law firm claimed that a foreclosure action is "'fundamentally distinct from a debt collection activity covered under the FDCPA.'" *Id.*

The *McCray* Court observed: "The FDCPA's definition of debt collector . . . does not include any requirement that a debt collector be engaged in an activity by which it makes a 'demand for payment' . . . ." *Id.* at 359. The Court concluded: "'[T]o be actionable under . . . the FDCPA, a debt collector needs only to have used a prohibited practice 'in connection with the collection of any debt' or in an '<u>attempt</u> to collect any debt.'" *Id.* (citing *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 123 (4th Cir. 2014)) (emphasis in *McCray*).

Writing for the panel in *McCray*, Judge Niemeyer also said, 839 F.3d at 361 (emphasis added):

> It is clear from the complaint in this case that *the whole reason that the White Firm and its members were retained by Wells Fargo was to attempt, through the process of foreclosure, to collect on the $66,500 loan in default.* McCray's complaint alleged that the White Firm is a "debt collection law firm" that mailed her a notice of intent to foreclose, which explicitly stated that it was attempting to collect on her debt, and that then filed a foreclosure action against her property.

> Additional statutory provisions are discussed, *infra*.

## IV.     The Summary Judgment Motion

Although ClaimAssist, CCS, and CCS Financial are represented by the same counsel (*see, e.g.*, ECF 57 at 7), the Summary Judgment Motion is styled as "ClaimAssist, LLC's Motion For Summary Judgment." ECF 57. It makes no mention of CCS or CCS Financial. Indeed, the Summary Judgment Motion asserts: "ClaimAssist, LLC is the only named defendant that has any bearing in this case as Plaintiff's Complaint does not assert any substantive allegations against Credit Control Services, Inc. or CCS Financial Services, Inc." *Id.* at 1 n.1; *see* ECF 57-1 at 1 n.1 (same).

### A.

Defendants aver that ClaimAssist is not a "debt collector" within the meaning of the FDCPA, because Garner's account was not in default when the Hospital "outsourced" it to ClaimAssist on May 24, 2014. *See* ECF 57, ¶¶ 22-23. Rew averred in his Affidavit (ECF 57-4) that on May 24, 2014, the Hospital "hired ClaimAssist" to process the Hospital's claim arising from treatment provided to Garner on May 16, 2014. *Id.* ¶ 3. According to Rew, "Garner's account was not in default" on that date. *Id.* ¶ 5.

The following portions of Rew's deposition are pertinent, ECF 57-3 at 66-68:

[Counsel for defendants]:

\*        \*        \*

Q. . . . Let me step back a little bit. Do you recall the date of treatment, and you can look if you need to.

A. I don't recall the actual date. It's been said before that it was maybe the 16th of May [2014].

[Counsel for plaintiff]: Our complaint alleges it was May 16th, 2014.

[Counsel for defendants]:

*     *     *

Q. And according to your affidavit, it was placed with ClaimAssist on the 24th [of May, 2014]?

A. Yes, sir.

Q. And that's about eight days from the incident?

A. Yes.

Q. From the date of treatment to the date that it was placed with ClaimAssist, was this account in default?

A. No, sir.

As indicated, a party's status either as a "debt collector" or "creditor" turns on "'whether the debt was in default at the time it was acquired.'" *Ruth*, 577 F.3d at 796. In particular, a party is not a "debt collector" within the meaning of the FDCPA if its activities "concern[] a debt which was not in default at the time it was obtained by such person . . . ." 15 U.S.C. § 1692a(6)(F). Under the FDCPA, a party who receives a debt that is not yet in default is generally considered a "creditor."

Plaintiff does not contend that her account was in default when it was transferred to ClaimAssist on May 24, 2014. Nor does she point to any exhibit showing her account was in default on that date. Plaintiff has failed to establish a dispute of material fact as to whether the debt transferred from the Hospital to ClaimAssist on May 24, 2014, was in default at that juncture. Indeed, the evidence on this issue is one-sided. According to the Affidavit of Rew (ECF 57-4, ¶¶ 3, 5), and Rew's deposition testimony (ECF 57-3 at 68), Garner's debt was not in default when it was transferred to ClaimAssist on May 24, 2014.

Of course, Rew stated at his deposition that on an unspecified date ClaimAssist transferred Garner's account to CCS. ECF 57-3 at 41-42. It appears that plaintiff's account was

in default at that juncture, because an account is transferred from ClaimAssist to CCS only if it is "in default or in collections." *Id.* at 56-57. However, Garner provides no evidence of any collection activity by any defendant after her account fell into default. Indeed, the Opposition omits any mention of the transfer of plaintiff's account from ClaimAssist to CCS, or when her account was placed in default.

Garner raises a related argument that is far from a model of clarity. She seems to contend that the Hospital, not LifeBridge, "own[ed]" her debt. ECF 65-1 at 25. And, she argues that ClaimAssist did not "obtain" Garner's account from the Hospital, as the debt holder. *Id.* at 4, 15, 30. Rather, ClaimAssist obtained the debt from LifeBridge. In this regard, Garner notes that NWH "had no legal relationship" with ClaimAssist, in the form of a contract. *Id.* at 25. Rather, ClaimAssist's "only legal relationship was with the separate entity Lifebridge Health, Inc., who never owned the debt[.]" ECF 65-1 at 4. Therefore, Garner maintains that when her account was transferred from LifeBridge to ClaimAssist, ClaimAssist never "'obtained' the 'debt'" from its true "owner", the Hospital. *Id.* at 4, 16, 27. Based on this reasoning, plaintiff contends that it is irrelevant to her FDCPA claim that her account was not in default on May 24, 2014. *Id.* at 16; *see* 15 U.S.C. § 1692a(6)(F). And, she maintains that ClaimAssist is an "indirect" debt collector, pursuant to 15 U.S.C. § 1692a(6). *See* ECF 65-1 at 11.

Garner does not point to any supporting authority for her view. And, the case on which she primarily relies, *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250 (S.D.N.Y. 1998), undermines her argument. There, the court said, *id.* at 253-54: "[The Plaintiff] suggests that . . . the term 'obtained,' . . . make[s] this [15 U.S.C. § 1692a(6)(F)] exemption apply only to those debts whose *ownership* was transferred or assigned to a defendant, as against those merely serviced or collected by a defendant. . . . The plaintiff's narrow reading of this exemption is not

supported by the language of the Act." (Emphasis in *Franceschi*). Under this reasoning, ClaimAssist was not required to "obtain" Garner's account through an official assignment, transfer, or purchase from the Hospital, in order for ClaimAssist to avail itself of the exemption contained in 15 U.S.C. § 1692a(6)(F).

*Henson*, 137 S. Ct. 1718, is relevant. There, the Supreme Court clearly said that the FDCPA defines "debt collector" to include a party seeking to collect a debt "'owed . . . *another*'", *i.e.*, a "third party collection agent[] working for a debt owner[.]" *Id.* at 1721 (emphasis added; alteration in *Henson*). Conversely, a party who acquires a debt from the original creditor may collect on that debt without being a "debt collector" under the FDCPA, because that party is collecting on his or her own behalf, not on behalf of "another." *Id.* Thus, if ClaimAssist had formally acquired Garner's debt, as plaintiff argues ClaimAssist was required to do, ClaimAssist would have been collecting on its own behalf, rather than on behalf of "another", and would therefore not be a "debt collector" under the FDCPA. *See Henson*, 137 S. Ct. at 1721.

ClaimAssist did not own Garner's account. It was initially hired to identify third parties from whom plaintiff was entitled to recover for the Accident. ClaimAssist was seeking to collect a debt on behalf of "another," *i.e.*, the Hospital and/or LifeBridge. *See Henson*, 137 S. Ct. at 1721. However, based on the "exclusion" reserved for "a person collecting nondefaulted debts on behalf of" another, ClaimAssist is not a "debt collector" for the purpose of this litigation. *See Henson*, 817 F.3d at 136 (citing 15 U.S.C. § 1692a(6)(F)).

LifeBridge is the "sole member" of the Hospital. ECF 57-4, ¶ 2. And, as the Director of Patient Financial Services for LifeBridge, Rew was "responsible" for "Northwest Hospital's billing procedures." ECF 57-3 at 30. According to Rew, Garner's account was not in default when it was transferred to ClaimAssist on May 24, 2014. *See* ECF 57-4, ¶ 5; ECF 57-3 at 66-68.

There is no evidence to the contrary.

**B.**

Plaintiff also contends that ClaimAssist misrepresented its debt-collector status, in violation of 15 U.S.C. § 1692j. *See* ECF 65-1 at 32-36.

Section 1692j states, in full:

> **(a)** It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

> **(b)** Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

Section 1692j was passed "specifically to address an abusive practice known in the credit industry . . . as 'flat-rating.'" *Lynn v. Selene Fin., L.P.*, FL-15-159, 2016 WL 5231832, at *9 (E.D.N.C. Aug. 25, 2016). "'A flat-rater is one who sells to creditors a set of dunning letters bearing the letterhead of the . . . collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt. In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters. [15 U.S.C. § 1692j] prohibits the practice of flat-rating because of its inherently deceptive nature.'" *Id.* (quoting *Franceschi*, 22 F. Supp. 2d at 256); *see* S. Rep. No. 95-382 (1977) (same).

Plaintiff appears to allege that the Hospital never retained ClaimAssist to collect auto liability accounts. *See* ECF 65-1 at 32-36. Rather, ClaimAssist sold its letterhead to the Hospital, which then used the letterhead to misrepresent to Garner that a debt-collector had been retained to collect the debt owed to the Hospital. *Id.* Yet, plaintiff points to no evidence in

-20-

support of this allegation.

It is undisputed that LifeBridge retained ClaimAssist to "assist in the collection of auto liability accounts." ECF 57-3 at 23-24. Indeed, plaintiff submitted a copy of the ClaimAssist Agreement (ECF 65-2) with her Opposition, and repeatedly asserted that ClaimAssist was involved in the collection of her debt. *See* ECF 65-1 at 1-32; *see also Murdoch v. Rosenberg & Assoc., LLC*, RWT-12-2234, 2013 WL 1209144, at *3 (D. Md. Mar. 22, 2013) (concluding that the plaintiff "defeat[ed] her own claim under Section 1692j of the FDCPA, because [she] allege[d] that [the defendant] *was* involved in the collection of her debt, and the letter in question state[d] that [the defendant] was in fact involved in collecting a debt") (emphasis in *Murdoch*). According to Rew, the ClaimAssist Agreement remained in effect throughout the relevant time period. ECF 57-3 at 12.

Of import, a party opposing summary judgment may not rest upon mere allegations, *Bouchat*, 346 F.3d at 522, as plaintiff has done in regard to her § 1692j claim. *See* ECF 65-1 at 32-36. To overcome defendants' Summary Judgment Motion, Garner "must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted); *see also Celotex*, 477 U.S. at 322-24. Garner has provided no evidence substantiating her allegation of "flat-rating." In other words, there is no indication the Letter that ClaimAssist sent to Garner on April 28, 2015 (ECF 57-2 at 23-34) was actually sent by the Hospital on letterhead acquired from ClaimAssist in order to deceive Garner into believing a debt-collector had been retained by the Hospital.

Construing the facts in the light most favorable to plaintiff, and drawing all reasonable inferences in her favor, as I must, I am satisfied that plaintiff has failed to demonstrate a dispute of material fact as to the claim lodged pursuant to 15 U.S.C. § 1692j.

## C.

In my view, plaintiff has failed to establish a dispute of fact as to any violation of the FDCPA by defendants. Accordingly, I shall grant the Summary Judgment Motion (ECF 57) as to plaintiff's FDCPA claims. Therefore, the Motion to Certify (ECF 64) is denied, as moot.

## V.     Sanctions

In the Motion for Sanctions (ECF 63), defendants seek sanctions under Fed. R. Civ. P. 11(b)(2) on the ground that they "incur[red] fees and costs defending against baseless claims." ECF 63, ¶ 13. They complain that Garner did not voluntarily dismiss her suit upon learning her account was not in default when it was transferred to ClaimAssist on May 24, 2014. *See* ECF 63-1 at 2. Based on this same ground, the Summary Judgment Motion seeks "sanctions" in the form of attorneys' fees and costs, pursuant to 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927. *See* ECF 57-1 at 4-5, 11-13.

Rule 11(b)(2) provides (bold in original), *id.*:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> *        *        *
> > **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Rule 11(c)(2) permits a party to file a motion for sanctions against another party for violation of Rule 11(b), provided that, before filing the motion with the court, the moving party must serve it on the opposing party and give the opposing party 21 days to withdraw "the challenged paper, claim, defense, contention, or denial."

"The primary purpose of Rule 11 is to punish violators and deter parties and their counsel

from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Cty., Inc.*, 474 F. App'x 947, 950 (4th Cir. 2012). "[A] complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990).

Section 1692k(a)(3) of 15 U.S.C. states, in relevant part: "On a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." And, 28 U.S.C. § 1927 states: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

In her Opposition to the Summary Judgment Motion, plaintiff asserts, *see* ECF 65-1 at 34 n.32: "LOCAL RULE 105.8(b) states: 'Unless otherwise ordered by the Court, a party need not respond to any motion filed under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927. The Court shall not grant any motion without requesting a response.' Accordingly, Plaintiff does not respond to Defendants' FRCP 11 or § 1927 motions, herein." As to the sanctions sought by defendants pursuant to 15 U.S.C. § 1692k(a)(3), plaintiff argues: "Defendants have identified absolutely no evidence of bad faith or indicia of harassment[.]" *Id.*

In my view, there is no indication that plaintiff acted in bad faith or intended to protract these judicial proceedings by asserting frivolous arguments, or by failing to dismiss her suit voluntarily. Sanctions are inappropriate.

Accordingly, I shall deny the Motion for Sanctions (ECF 63). And, I shall deny the

Summary Judgment Motion as to its request for sanctions in the form of costs and attorneys' fees under 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927.

## VI.    Conclusion

For the foregoing reasons, I shall grant the Summary Judgment Motion (ECF 57) as to plaintiff's FDCPA claims.  But, I shall deny the Summary Judgment Motion (ECF 57) as to the sanctions sought by defendants in the form of costs and fees, pursuant to 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927.  I shall also deny the Motion for Sanctions (ECF 63), filed pursuant to Fed. R. Civ. P. 11(b)(2).  Having granted summary judgment as to plaintiff's FDCPA claims, I shall deny the Motion to Certify (ECF 62), as moot.

An Order follows.


Date:  August 9, 2018                               _____/s/_____
                                                    Ellen Lipton Hollander
                                                    United States District Judge